ORIGINAL

1    Elizabeth J. Cabraser (State Bar No. 083151)
     ecabraser@lchb.com
2    Wendy R. Fleishman
     wfleishman@lchb.com
3    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
     Embarcadero Center West
4    275 Battery Street, 30th Floor
     San Francisco, CA  94111-3339
5    Telephone: (415) 956-1000
     Facsimile: (415) 956-1008
6
     Attorneys for Plaintiff
7
     [Additional Counsel On Signature Page]
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                   SAN FRANCISCO / OAKLAND DIVISION
11                                                                    BZ
12
13   RASHID HUNTER, individually and on          Case No.
     behalf of all others similarly situated,
14                                               **CLASS ACTION COMPLAINT FOR
                       Plaintiff,                DECLARATORY, INJUNCTIVE AND
15                                               EQUITABLE RELIEF AND DAMAGES**
     v.
16                                               **DEMAND FOR JURY TRIAL**
     MEDTRONIC, INC., MEDTRONIC
17   INTERNATIONAL TECHNOLOGY,
     INC. formerly known as MEDTRONIC
18   PUERTO RICO, INC., and MEDTRONIC
     PUERTO RICO OPERATIONS CO.,
19
                       Defendants.
20
21
22            Plaintiff Rashid Hunter, by his undersigned counsel, individually and for all other

23   residents and citizens of the State of California who are similarly situated, hereby commences this

24   individual and Class Action against Medtronic, Inc., Medtronic International Technology, Inc.

25   formerly known as Medtronic Puerto Rico, Inc. and Medtronic Puerto Rico Operations Co.

26   (hereinafter collectively "Defendants" or "Medtronic," unless otherwise stated) for compensatory,

27   equitable, injunctive, and declaratory relief.  Plaintiff makes the following allegations based upon

28   his personal knowledge as to his own acts, and upon information and belief, as well as upon his

1   attorneys' investigative efforts as to Medtronic's actions and misconduct, and alleges as follows:

2                                              **PARTIES**

3          1.      Individual and representative Plaintiff Rashid Hunter is a citizen and

4   resident of the County of Alameda in the State of California.

5          2.      Defendant Medtronic, Inc., is a Minnesota corporation, with its principal

6   place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Medtronic

7   develops technology to treat conditions such as heart disease and other illnesses. Medtronic

8   manufactures medical devices and sells them worldwide. Medtronic's Cardiac Rhythm Disease

9   Management Division ("CRM Division") is the division that develops, researches, advertises,

10  promotes, markets and sells all of Medtronic implantable defibrillators ("ICDs"), and leads, some

11  of which are marketed under the trade name "Sprint Fidelis." CRM Division's operations are

12  principally conducted out of its facilities at Cardiac Rhythm Disease Management at 7000 Central

13  Ave., Minneapolis, Minnesota 55432.

14         3.      Defendant Medtronic International Technology, Inc., formerly known as

15  Medtronic Puerto Rico, Inc., is a corporation existing by virtue of the laws of the Territory of

16  Puerto Rico, with its principal place of business at Road 149, km 56.3, Box 6001 Villalba, PR.

17         4.      Defendant Medtronic Puerto Rico Operations Co., is a corporation existing

18  by virtue of the laws of the Territory of Puerto Rico, with its principal place of business at Road

19  149, km 56.3, Box 6001 Villalba, PR.

20         5.      Medtronic International Technology, Inc., and Medtronic Puerto Rico

21  Operations Co., are wholly owned subsidiaries of Medtronic, Inc., which formulate, develop,

22  manufacture and sterilize the devices at issue in this lawsuit.

23                                          **INTRODUCTION**

24         6.      Medtronic designs, researches, develops, manufactures, tests, markets,

25  advertises, promotes, distributes, and sells products that treat cardiac arrhythmias, heart failure,

26  and coronary and peripheral vascular disease. An arrhythmia is an irregular cardiac rhythm,

27  which can cause significantly decreased cardiac output and ultimately, death. Medtronic holds

28  itself out as "the global leader in medical technology, alleviating pain, restoring health and

741778.1                              - 2 -            CLASS ACTION & INDIVIDUAL CLAIMS
                                                                        AND JURY DEMAND

1   extending life for millions of people around the world." *See* 2005 Annual Statement, Medtronic,
2   Inc.

3       7.      A number of devices designed to detect and treat abnormally fast and
4   irregular heart rhythms and to provide pacing for improper heart rhythms are available from
5   Medtronic and other manufacturers, including implantable cardiac defibrillators ("ICDs"). ICDs
6   contain pacemakers as well as defibrillators; while a pacemaker is used primarily to correct slow
7   heart rates, an ICD detects and corrects both fast and slow heart rates. The pacemaker portion
8   corrects the slow rates and the anti-tachycardia portion can "over-drive pace" rapid rates. The
9   defibrillator portion can shock ventricular tachycardia and ventricular fibrillation to stop the heart
10  and allow an appropriate rhythm to take over.

11      8.      ICDs are designed to be implanted primarily under the skin of the chest
12  wall. The device's power source, or pulse generator, is implanted in a pouch formed in the chest
13  wall generally over the left pectoralis major muscle.

14      9.      Typically, wires called leads are inserted through a major vein and attached
15  directly to the muscle on the inside of the heart. Electrodes that sense the heart's rhythm are built
16  into the lead wires and positioned in the heart, where they monitor the heartbeat and can
17  administer an electric shock to abort a dangerous "over-drive pace," a very rapid rhythm, or pace
18  the heart at a normal rhythm if an irregularity is detected.

19      10.     Such devices are used in patients, like Plaintiff Rashid Hunter and the
20  Class members (hereinafter "Plaintiff" and "Class members"), who have arrhythmias or irregular
21  heartbeats that are considered life-threatening. The Class members with these medical problems
22  include patients who are at risk for ventricular fibrillation (rapid, ineffective contraction of the
23  ventricles of the heart), and ventricular tachycardia (excessively rapid heartbeat) that are poorly
24  controlled by medication. These arrhythmias or irregular heart beats can result in the loss of
25  consciousness or death, unless the patient receives therapy from an appropriate device to put the
26  heart back into an appropriate cardiac rhythm.

27      11.     If an implanted ICD and lead operate properly, the system can save a
28  patient's life. If either fails to operate, the patient may die within minutes.

741778.1                              - 3 -            CLASS ACTION & INDIVIDUAL CLAIMS
                                                              AND JURY DEMAND

1

**THE SPRINT FIDELIS LEADS**

2      12.      This Class Action seeks recovery for residents and citizens of the State of

3  California who are patients who have been implanted with Sprint Fidelis leads marketed by

4  Medtronic under the following model numbers:

5                  (i)      the 6949 LFJ extendable/retractable screw fixation (S) model;

6                  (ii)      the 6948 LFH tuned fixation (T) model;

7                  (iii)      the 6931 LFT S fixation; and

8                  (iv)      the 6930 LFK T fixation.

9      13.      At all times relevant, these Sprint Fidelis leads were researched, developed,

10  manufactured, marketed, promoted, advertised, sold, and distributed by Medtronic to be used in

11  connection with ICDs.

12      14.      The majority of ICDs now use two or three leads. As a result, smaller high-

13  voltage leads are attractive to electrophysiologists because they are believed to be easier to insert,

14  and are less likely to obstruct blood flow or distort the tricuspid valve. The Medtronic Sprint

15  Fidelis leads are smaller high voltage leads.

16      15.      In 2001, Medtronic marketed its then-smallest defibrillation lead called the

17  Sprint Quattro Secure, model 6947 ("Quattro leads").

18      16.      In 2004, Medtronic introduced and marketed the Sprint Fidelis to replace

19  the Sprint Quattro as the high voltage lead of choice and to attempt to gain a larger market share.

20      17.      At the time that Medtronic announced the marketing of the Sprint Fidelis

21  leads, Medtronic claimed that "[t]he small size of the Sprint Fidelis (Fidelis is a Latin word that

22  means 'faithful') helps improve passage into a patient's venous system for an easier implant, and

23  minimizes venous obstruction." Medtronic also referred to the leads as "state-of-the-art." *See*

24  Medtronic News Release (Sept. 2, 2004), available at

25  http://wwwp.medtronic.com/Newsroom/NewsReleaseDetails.do?itemId=1095281834568&lang=

26  en_US.

27      18.      Medtronic further represented that the Sprint Fidelis leads were based on

28  the "proven" design of the Quattro leads.

- 4 -                          CLASS ACTION & INDIVIDUAL CLAIMS
                                                                                            AND JURY DEMAND

19.   The Sprint Fidelis leads were approved for sale by the United States Food and Drug Administration (the "FDA") in September 2004 and have been implanted in over 160,000 patients worldwide.

20.   The Sprint Fidelis lead is a 6.6 French[1] isodiametric multifilar true bipolar high voltage lead with silicone insulation and polyurethane outer coating.

21.   The Models 6949 and 6948 have two high voltage coils; the 6930 and 6931 models have a single right ventricular high voltage coil. As of January 2007, at least 144,311 model 6949 Sprint Fidelis leads, 7510 model 6948 leads, 5387 model 6931 leads, and 236 model 6930 leads had been implanted.

## THE DEFECTS IN THE SPRINT FIDELIS LEADS

22.   Since the Sprint Fidelis leads were introduced to the market, it has become evident that a significant portion of the leads have potentially fatal defects.

23.   Such defects were discussed in an article written by doctors at The Minneapolis Heart Institute, one of the premiere heart institutes in the world, based on a study of the incidence of lead failures in the Sprint Fidelis models compared to the Sprint Quattro models. According to the report, which was prepared by Dr. Robert G. Hauser, *et al.*, and published in the Heart Rhythm Society Journal in the Spring of 2007, "Early Failure of Small-Diameter High-Voltage Inflammable Cardioverter-Defibrillator Lead," Heart Rhythm Society 2007.03.041 (2007) ("Early Failure"), the Minneapolis Heart Institute's experience reflected that, between September 2004 and February 2007, 583 patients were implanted with Sprint Fidelis Model 6949 leads, and nine patients received other Sprint Fidelis models. During that time, six patients experienced Sprint Fidelis Model 6949 lead failures. The failed Sprint Fidelis Model 6949 leads had been implanted by various electrophysiologists, cardiologists and thoracic surgeons. The average time to failure was fourteen months (based on a range of four to twenty-three months). *Early Failure*, p. 893.

---

[1]   French is a measure of circumference in this instance. One French is equal to 0.33 mm, or approximately 0.012 inches.

741778.1                                    - 5 -                    CLASS ACTION & INDIVIDUAL CLAIMS
                                                                                AND JURY DEMAND

1    24.    The study compared the actuarial survival of the 583 Sprint Fidelis Model

2    6949 leads implanted at the Minneapolis Heart Institute to the survival of 285 Sprint Quattro

3    Model 6947 leads implanted at the Institute between November 2001 and March 2007. The

4    difference in survival between the Sprint Fidelis Model 6949 lead and the Sprint Quattro Secure

5    Model 6947 lead was extremely significant. The failure rate for the Sprint Fidelis Model 6949

6    lead was 1-2% during the first two years of implant and was ten times greater than the failure rate

7    for the Sprint Quattro Secure Model 6947 lead. *Early Failure*, p. 893-894

8    25.    The significant number of lead failures involved lead fractures of the

9    PACE-sense conductor or coil in the Sprint Fidelis Model 6949. The fracture rate for the Sprint

10    Fidelis leads was three times higher than the fracture rate of the Quattro Model 6947. *Early*

11    *Failure*, p. 894-895.

12    26.    Another study, conducted at Cornell University Medical Center by Sunil

13    Mirchandani, *et al.*, found "(a) 17% incidence of abnormal right ventricular sensing during

14    follow-up of patients implanted with the Medtronic Sprint Fidelis ICD lead," necessitating "an

15    early revision of the system in 4% of patients." *See* Abstract of *Defibrillator Leads: Is Smaller*

16    *Necessarily Better?*, 2006, available at http://vivo.library.cornell.edu/entity.

17    27.    Medtronic has not disclosed the precise mechanism of the Sprint Fidelis

18    lead fracture failures. However, it appears that the defect in the Sprint Fidelis may be attributable

19    to the small diameter of the coil and conductors and the fact that, in light of this small diameter, it

20    is subject to stress damage both during and after implant. Fracture eventually occurs when the

21    conductor is critically overstressed. The number of fractures that have been observed in these

22    leads indicates that there is a clear defect in the leads themselves, and that defect was

23    demonstrated in the Model 6949 Sprint Fidelis leads that were implanted in Plaintiff Rashid

24    Hunter. Further, Plaintiff Rashid Hunter and Class members who, like Plaintiff Mr. Hunter were

25    implanted with Sprint Fidelis leads, require ongoing and expensive medical monitoring of their

26    Sprint Fidelis leads.

27    28.    A review of the FDA's MAUDE database, which contains reports of

28    adverse events associated with the use of medical devices, discloses that, as of July 2007, over

1    1000 Medical Device Reports ("MDRs) regarding Sprint Fidelis leads had been filed since
2    September 2004. The most frequent complaints were fractures and inappropriate shocks, and the
3    most common observations were high impedance, oversensing and noise, and failure to capture or
4    high threshold.

5           29.    Medtronic analyzed approximately 125 of those leads that were returned to
6    Medtronic before July 2006. According to the relevant MDR reports, Medtronic concluded that
7    77 out of 125 leads (or 62%) were defective. The predominant manifestation of the defect was
8    conductor fracture, involving the PACE-sense conductor and coil or the high voltage
9    (defibrillation) conductor. PACE-sense conductor or coil fracture was manifested by
10   inappropriate shocks or oversensing/noise and high impedance, while high voltage conductor
11   fracture was primarily linked to high impedance

12          30.    Medtronic filed more than 350 additional MDRs regarding the Sprint
13   Fidelis leads between August 2006 and February 2007. Medtronic did not include similar
14   analysis of those leads in the MDRs filed by Medtronic during this period.

15          31.    On March 21, 2007, Medtronic issued a physician advisory, in the nature of
16   a "Dear Doctor Letter," that advised physicians of "the higher than expected conductor fracture
17   rates in … Sprint Fidelis leads." Medtronic claims in that letter to be investigating reports of lead
18   failures, however, still represents that the Sprint Fidelis leads are performing consistent with, and
19   "in line with other Medtronic leads …. And consistent with lead performance publicly reported
20   by other manufacturers." This letter also states, "…variables within the implant procedure may
21   contribute significantly to these fractures… For conductor fractures that occur around the suture
22   sleeve, our preliminary investigation suggests that under certain implant techniques, the lead
23   appears to be exposed to severe bending or kinking in the pectoral area." At no time prior to this
24   letter did Medtronic warn physicians that its leads must be specially handled during the
25   implantation procedure or that they could "severely bend" or "kink" if they are implanted using
26   certain accepted implant techniques.

27          32.    On October 15, 2007, Medtronic voluntarily withdrew all unimplanted
28   Sprint Fidelis leads from the U.S. market, citing several deaths related to the leads. Medtronic

741778.1                                        - 7 -              CLASS ACTION & INDIVIDUAL CLAIMS
                                                                              AND JURY DEMAND

1   stated that approximately 268,000 Sprint Fidelis leads have been implanted worldwide.

2   Medtronic recommended that implanted Sprint Fidelis leads be monitored and reprogrammed.

3          33.    Medtronic has recommended medical monitoring and reprogramming of

4   the ICDs to monitor the Sprint Fidelis leads, according to an article in the October 15, 2007 *Wall*

5   *Street Journal*, "Medtronic Pulls Defibrillator Wires Off Market."

6          34.    Medtronic's representation of the consistency of the performance of the

7   Sprint Fidelis leads is untrue in light of the reported experience with the leads and the various

8   issues included in the MAUDE database reports.

9          35.    At all times relevant, Medtronic misrepresented the safety of the Sprint

10  Fidelis leads and negligently manufactured, marketed, advertised, promoted, sold, and distributed

11  the leads as safe devices to be used together with ICDs for prophylactic treatment of patients with

12  prior myocardial infarction and decreased ejection fraction, ventricular arrhythmias, and patients

13  who are at high risk for developing such arrhythmias. Some patients are dependent on such

14  devices to maintain an appropriate heart rhythm, and therefore, adequate cardiac output. For

15  these patients, failure of the leads connected to the ICD can cause sudden faintness, or loss of

16  consciousness, and can result in death.

17         36.    At all times relevant, Medtronic failed to warn that the Sprint Fidelis leads

18  were prone to breakage or that particular processes should be implemented in order to avoid

19  breaking the Sprint Fidelis leads.

20         37.    As a result of their defective design and manufacture, Medtronic's Sprint

21  Fidelis leads suffer fracture, leading to malfunction in the transmission of the electric signal from

22  the ICD to the patient's heart.

23         38.    At all times relevant, the Sprint Fidelis leads (collectively the "leads") were

24  researched, developed, manufactured, marketed, promoted, advertised and sold by Medtronic.

25         39.    At all times relevant, Medtronic misrepresented the safety of the Sprint

26  Fidelis leads, and negligently manufactured, marketed, advertised, promoted, sold and distributed

27  the leads as safe and effective devices to be used for implantation with ICDs for prophylactic

28  treatment of patients with prior myocardial infarction and a limited ejection fraction, patients who

741778.1                  - 8 -              CLASS ACTION & INDIVIDUAL CLAIMS

1  have had spontaneous and/or inducible life-threatening ventricular arrhythmias, and patients who
2  are at high risk for developing such arrhythmias.

3      40.    At all times relevant, Medtronic knew, and had reason to know, that the
4  Sprint Fidelis leads were not safe for the patients for whom they were prescribed and implanted,
5  because the leads fractured and otherwise malfunctioned, and therefore failed to operate in a safe
6  and continuous manner, causing serious medical problems and, in some patients, catastrophic
7  injuries and deaths.

8      41.    At all times relevant, Medtronic knew, and had reason to know, that its
9  representations that the Sprint Fidelis leads were easier to implant and based on "proven"
10  technology were materially false and misleading.

11      42.    As a result of this defective design and manufacture, the leads can cause
12  serious physical trauma and/or death. Medtronic knew and had reason to know of this tendency
13  and the resulting risk of injuries and deaths, but concealed this information and did not warn
14  Plaintiff, the Class members or their physicians, preventing Plaintiff, the Class members and their
15  physicians, and the medical community from making informed choices about the selection and
16  use of particular defibrillator leads for implantation.

17      43.    Approximately 268,000 of the affected devices remain in service in the
18  United States and in other countries.

19      44.    Medtronic has records of all patients with implanted leads, and can identify
20  all members of the class of California state residents and citizens with implanted and defective
21  leads who require medical monitoring.

22      45.    The information Medtronic has made available to patients and their doctors
23  about the need for medical monitoring, the types of available monitoring, and the costs incident to
24  such monitoring are extremely inconsistent and confusing.

25      46.    Plaintiff seeks implementation of a medical monitoring program to be
26  administered by this Court, which will afford each California state lead recipient with consistent
27  monitoring paid for by Defendants.

28

741778.1                     - 9 -                  CLASS ACTION & INDIVIDUAL CLAIMS
                                                        AND JURY DEMAND

1    47.    Plaintiff now brings this action to seek injunctive relief or an expedited

2    trial pursuant to Rule 65 of the Federal Rules of Civil procedure to adjudicate his claims against

3    Medtronic and to implement a medical monitoring program immediately.

4    **JURISDICTION AND VENUE**

5    48.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)

6    because this action is a class action that includes parties and Class members who are citizens of

7    different states and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of

8    interest and costs.

9    49.    Venue is proper under 28 U.S.C. §§ 1391 (a) and (c).  Medtronic earns

10    substantial compensation and profits from sales of Sprint Fidelis leads in this District.

11    **INTRADISTRICT ASSIGNMENT**

12    50.    Assignment of this matter to the San Francisco/Oakland Division of this

13    Court is proper pursuant to L.R. 3-2(c) and (d), because Mr. Hunter resides in Alameda County

14    and the action arises in Alameda County.

15    **CLASS ACTION ALLEGATIONS**

16    51.    Plaintiff brings this action on behalf of himself and all others similarly

17    situated, as members of a proposed Plaintiff class (the "Class") of all individuals who have been

18    implanted with the leads at issue, and propose a California  Class, composed of:

19    All citizens and residents of the State of California who have been
         implanted with Sprint Fidelis leads marketed by Medtronic under
20    the following model numbers: (1) the 6949 LFJ
         extendable/retractable screw fixation (S) model; (2) the 6948 LFH
21    tuned fixation (T) model; (3) the 6931 LFT S fixation; and (4) the
         6930 LFK T fixation, manufactured by Medtronic ("patient
22    recipients"), during the period from January 1, 2004 through the
         present (the "Class period"), and their legal guardians or
23    representatives.

24    52.    Excluded from the proposed subclass are (i) Medtronic, any entity in which

25    Medtronic has a controlling interest or which have a controlling interest in Medtronic, and

26    Medtronic's legal representatives, predecessors, successors and assigns; (ii) the judicial officers to

27    whom this case is assigned; and (iii) any member of the immediate families of excluded persons.

28

741778.1                                    - 10 -                    CLASS ACTION & INDIVIDUAL CLAIMS
                                                                                    AND JURY DEMAND

53.   The Class is so numerous that the individual joinder of all its members is impracticable.  While the exact number and identification of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery of Medtronic, Plaintiff is informed and believes that the Class includes thousands of patient recipients statewide.

54.   This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)-(4), 23(b)(2), and 23(b)(3) and/or 23(c)(4)(A).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.  Common questions of fact and law exist as to all Class members which predominate over any questions affecting only individual Class members.  These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

(a)   Whether there are design and/or manufacturing defects in Medtronic's Sprint Fidelis leads;

(b)   Whether Medtronic failed to follow United States Food & Drug Administration ("FDA") good manufacturing practices, failed to properly investigate manifestations of the lead defects over the past several years, failed to adequately document reports of the defects, and failed to exercise adequate quality control;

(c)   Whether Medtronic's conduct in designing, manufacturing, marketing, and monitoring the Sprint Fidelis leads fell below the duty of care owed by Medtronic to Plaintiff and the other Class members;

(d)   Whether Medtronic intentionally, deliberately, uniformly, knowingly, carelessly, recklessly, or negligently misrepresented, omitted, concealed and suppressed material and important information regarding the existence of a defect in the Sprint Fidelis leads from Plaintiff, the FDA, physicians and Class members;

- 11 -

1        (e)   Whether the Sprint Fidelis leads listed in the proposed Class definition

2              share common and inherent design and manufacturing defects that cause

3              them to fracture and malfunction, causing inappropriate shocks and failure

4              to deliver an effective shock when needed, creating a risk of injury or death

5              to patients in whom they were implanted;

6        (f)   Whether Medtronic negligently, intentionally, deliberately, uniformly, or

7              recklessly materially misrepresented, concealed, omitted, or suppressed

8              the quality and usefulness of the leads, thereby inducing Plaintiff and the

9              Class to accept implantation of the Sprint Fidelis leads rather than another

10            brand of leads, which would not have been prone to the defects;

11      (g)   Whether Medtronic is liable for selling a dangerously defective product;

12      (h)   Whether Medtronic failed to adequately warn or notify patient recipients,

13           the medical community, and the regulators of the defect, dangers,

14           disadvantages and hazards of the leads;

15      (i)   Whether Medtronic failed to adequately warn or notify hospitals and

16           physicians regarding the defect, malfunction and/or hazards of the

17           defective leads;

18      (j)   Whether Medtronic breached express or implied warranties;

19      (k)   Whether Medtronic's conduct constitutes negligence;

20      (l)   Whether Medtronic is liable for negligent infliction of emotional distress;

21      (m)   Whether Medtronic's misconduct violated applicable consumer protection

22           statutes;

23      (n)   Whether Plaintiff and Class members are entitled to injunctive and other

24           equitable relief, including restitution and disgorgement, and if so, the

25           nature of such relief;

26      (o)   Whether Plaintiff and Class members are entitled to medical monitoring,

27           reprogramming, surveillance and medical treatment at Medtronic's

28           expense;

1
2
3
4

      (p)    Whether Medtronic is liable for punitive or exemplary damages, and if so, the amount necessary and appropriate to punish them for their conduct, to deter others, and to fulfill the other policies and purposes of punitive and exemplary damages; and,

5
6
7

      (q)    Which mechanism, among the methods available under the Federal Rules of Civil Procedure, is superior to ensure the fair and efficient adjudication of this controversy within the meaning of Fed. R. Civ. P. 23(b)(3).

8          55.    Plaintiff's claims are typical of the claims of the Class members. Plaintiff
9    and other Class members must prove the same facts in order to establish the same claims,
10   described herein, which apply to all Class members.

11         56.    Plaintiff is an adequate representative of the Class because he is a member
12   of the Class and his interests do not conflict with the interests of the Class members he seeks to
13   represent. Plaintiff has retained counsel competent and experienced in the prosecution of
14   products liability, mass torts, and consumer fraud class actions, and together Plaintiff and counsel
15   intend to prosecute this action vigorously for the benefit of the Class. The interests of Class
16   members will fairly and adequately be protected by Plaintiff and their counsel.

17         57.    A class action is superior to other available methods for the fair and
18   efficient adjudication of this litigation since individual litigation of the claims of all Class
19   members is impracticable. Even if every Class member could afford individual litigation, the
20   court system could not. It would be unduly burdensome to the courts, in which individual
21   litigation of thousands of cases would proceed. Individual litigation presents a potential for
22   inconsistent or contradictory judgments, the prospect of a race for the courthouse, and an
23   inequitable allocation of recovery among those with equally meritorious claims. Individual
24   litigation increases the expense and delay to all parties and the court system in resolving the legal
25   and factual issues common to all Medtronic Sprint Fidelis lead claims. By contrast, the class
26   action device presents far fewer management difficulties and provides the benefit of a single
27   adjudication, economies of scale, and comprehensive supervision by a single court.

28

                                   - 13 -                  CLASS ACTION & INDIVIDUAL CLAIMS
AND JURY DEMAND

1    58.    The various claims asserted in this action are additionally or alternatively

2    certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2)

3    because:

4         (a)    The prosecution of separate actions by thousands of individual Class

5              members would create a risk of inconsistent or varying adjudications with

6              respect to individual Class members, thus establishing incompatible

7              standards of conduct for Medtronic;

8         (b)    The prosecution of separate actions by individual Class members would

9              also create the risk of adjudications with respect to them that would, as a

10             practical matter, be dispositive of the interests of the other Class members

11             who are not a party to such adjudications and would substantially impair or

12             impede the ability of such non-party Class members to protect their

13             interests;

14        (c)    Medtronic has acted or refused to act on grounds generally applicable to

15             the entire Class, thereby making appropriate final declaratory and

16             injunctive relief with respect to the Class as a whole.

17                                 **ALLEGATIONS**

18   59.    Medtronic designed, manufactured, marketed, promoted, sold, and

19   distributed four (4) models of defective leads, including: (1) the Sprint Fidelis 6949 LFJ

20   extendable/retractable screw fixation (S) model; (2) the 6948 LFH tuned fixation (T) model; (3)

21   the 6931 LFT S fixation model; and (4) the 6930 LFK fixation (T) model.  All of the these

22   models contain the same defect.

23   60.    The Sprint Fidelis leads were originally approved for sale by the FDA in

24   September 2004.

25   61.    The Sprint Fidelis leads are uniformly defective in that they are prone to

26   fracture of the PACE-sense conductor and coil and the HV conductor, causing them to fail to

27   function in a manner which may not be immediately detectable by the patient. The

28

741778.1                                - 14 -             CLASS ACTION & INDIVIDUAL CLAIMS
                                                                      AND JURY DEMAND

1 │ malfunctioning can lead to terrifying inappropriate defibrillation shocks, failure to deliver

2 │ appropriate (life-giving) defibrillation therapy and death.

3 │       62.    There is no test that predicts whether the Sprint Fidelis leads will fail.

4 │       63.    To this day, Medtronic has refused to suggest replacement of the defective

5 │ Sprint Fidelis leads in its patients, even though emergency replacement of the leads is required in

6 │ patients in whom these defects have been discovered.

7 │ **A.**    **Medtronic's Concealment of the Defects**

8 │       64.    Medtronic's failure to document or follow up on the known defects in its

9 │ Sprint Fidelis leads, and concealment of known defects from the FDA, Plaintiff, the medical

10 │ community and Class members constitutes fraudulent concealment that equitably tolls any

11 │ applicable statute of limitation.

12 │       65.    No member of the Class could have discovered the existence of the defect

13 │ in the Sprint Fidelis leads until at least March 2007, when the first physician advisory was sent by

14 │ Medtronic to physicians concerning the fragile nature of these leads.

15 │       66.    Medtronic is estopped from relying on the statute of limitations as a

16 │ defense because Medtronic actively concealed the lead defects, suppressing reports, failing to

17 │ follow through on FDA notification requirements, and failing to disclose known defects to

18 │ physicians or Class members. Instead of revealing the defects, Medtronic continued to represent

19 │ its products as safe for their intended use.

20 │       67.    Medtronic's conduct, as described in the preceding paragraphs, amounts to

21 │ conduct purposely committed, which Medtronic must have realized was dangerous, heedless and

22 │ reckless, without regard to the consequences or the rights and safety of Plaintiff and Class

23 │ members.

24 │ **B.**    **Medtronic's Failure to Provide Adequate and Accurate Information**

25 │       68.    Thousands of patients' lives rely upon the proper functioning of these

26 │ Sprint Fidelis leads, and they — along with their physicians — have been vigorously attempting

27 │ to assess the risks that they now face.

28 │

1    69.    Patients and physicians remain uninformed and confused about whether the

2    devices should be removed, or even whether all of the defects have been disclosed.

3    70.    Because of incomplete, inconsistent, and/or confusing information

4    published by Medtronic, it remains unclear how many patients are affected by these defective

5    leads. Although, based on the population of Medtronic patients whose claims are asserted in this

6    Complaint, it is likely to be thousands of heart patients in the State of California.

7    **C.    Corporate Liability**

8    71.    At all times herein mentioned, each of the Defendants was the agent,

9    servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other

10   Defendants herein and was at all times operating and acting within the purpose and scope of said

11   agency, service, employment, partnership, conspiracy and/or joint venture and rendered

12   substantial assistance and encouragement to the other Defendants, knowing that their collective

13   conduct constituted a breach of duty owed to Plaintiff.

14   72.    There exists and, at all times herein mentioned, there existed a unity of

15   interest in ownership between certain Defendants and other certain Defendants such that any

16   individuality and separateness between the certain Defendants has ceased and these Defendants

17   are the alter ego of the other certain Defendants and exerted control over those Defendants.

18   Adherence to the fiction of the separate existence of these certain Defendants as entities distinct

19   from other certain Defendants will permit an abuse of the corporate privilege and would sanction

20   a fraud and/or would promote injustice.

21   73.    At all times herein mentioned, Defendants, and each of them, were

22   engaged in the business of, or were successors in interest to, entities engaged in the business of

23   researching, designing, formulating, compounding, testing, manufacturing, producing, processing,

24   assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing

25   and/or advertising for sale, and selling products for use by Plaintiff.  As such, each Defendant is

26   individually, as well as jointly and severally, liable to Plaintiff for Plaintiff's damages.

27   74.    At all times herein mentioned, the officers and/or directors of the

28   Defendants named herein participated in, authorized and/or directed the production and

741778.1                                     - 16 -                    CLASS ACTION & INDIVIDUAL CLAIMS
                                                                                      AND JURY DEMAND

1    promotion of the aforementioned products when they knew, or with the exercise of reasonable

2    care and diligence should have known, of the hazards and dangerous propensities of said

3    products, and thereby actively participated in the tortuous conduct that resulted in the injuries

4    suffered by Plaintiff.

### D.    Medical Monitoring

6        75.    On October 15, 2007, Medtronic publicly advised all patients with their

7    leads that medical monitoring of their leads was advisable.

8        76.    On October 22, 2007, Medtronic sent form letters to each of the patients

9    and Class members with defective leads.  To date, Medtronic sent letters to 175,000 patients with

10   Sprint Fidelis leads and the hospitals and doctors, who had implanted these leads.  In those letters,

11   Medtronic advised patients, like Mr. Hunter, to seek advice from their physicians so that their

12   devices could be monitored and reprogrammed. The information made available to Mr. Hunter

13   and others Class members is, however, both confusing and frightening, because the failure of the

14   leads is not predictable.

### PLAINTIFF

16       77.    Plaintiff Rashid Hunter has a cardiovascular condition that necessitates the

17   use of an implantable cardiac pacemaker/defibrillator.  Mr. Hunter was implanted with a cardiac

18   pacemaker/defibrillator combination (an "ICD") on January 17, 2005, at Washington Hospital

19   Healthcare System in Fremont, California.  The ICD was attached to his heart with a lead wire

20   system called a Sprint Fidelis lead, model number 6949, manufactured by Medtronic.

21       78.    As a result of the Medtronic advisory, it is clear that Mr. Hunter's 6949

22   must be closely monitored.

23       79.    Mr. Hunter has suffered and will continue to suffer severe emotional

24   damages and has incurred, and will in the future continue to incur medical expenses and losses,

25   including the need for an expense of ongoing medical monitoring, as a result of Medtronic's

26   wrongful conduct.

27

28

741778.1                                    - 17 -                    CLASS ACTION & INDIVIDUAL CLAIMS
                                                                              AND JURY DEMAND

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### (Products Liability)

80.    Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporates the allegations contained in the foregoing paragraphs.

81.    At all relevant times hereto, Medtronic was engaged in the business of designing, manufacturing, assembling, promoting, advertising, selling, and distributing the Sprint Fidelis leads for ultimate sale to, and implantation in, heart disease/disorder patients. Medtronic designed, manufactured, assembled, and sold the Sprint Fidelis leads to hospitals and physicians, knowing that they would be thereby sold to patients with heart diseases and disorders (including Plaintiff and Class members) and implanted in those patients.

82.    Medtronic's Sprint Fidelis leads were expected to and did reach Plaintiff and the Class without substantial change in their condition as manufactured and sold by Medtronic. In light of the defects described herein, at the time the leads reached Plaintiff and the Class, they were in a condition not contemplated by any reasonable person among the expected users of the devices, and were unreasonably dangerous to the expected users of the devices when used in reasonably expectable ways of handling or consumption.

83.    The Sprint Fidelis leads designed, manufactured, assembled, and sold by Medtronic to Plaintiff and Class members were in a defective condition unreasonably dangerous to any user or consumer of the devices, and Plaintiff and Class members were, and are, in the class of persons that Medtronic should reasonably have foreseen as being subject to the harm caused by the devices' defective condition.

84.    Plaintiff and Class members used the leads in the manner in which the leads were intended to be used. This has resulted in injuries to Plaintiff and Class members.

85.    Neither Plaintiff nor Class members were aware of, and could not in the exercise of reasonable care have discovered, the defective nature of Medtronic's Sprint Fidelis leads. Nor could they have known that Medtronic designed, manufactured or assembled the leads in a manner that would increase the risk of bodily injury to Plaintiff and the Class.

86.     As a direct and proximate result of Medtronic's design, manufacture, assembly, marketing and sales of the Sprint Fidelis leads, Plaintiff and the Class members have sustained and will continue to sustain severe emotional distress, the need for an expense of ongoing medical monitoring, economic losses and consequential damages, and are therefore entitled to compensatory relief according to proof, and entitled to a declaratory judgment that Medtronic is liable to them for breach of its duty to Plaintiff and the Class members and its failure to provide a safe and effective medical device. Plaintiff and the Class members are also entitled to equitable relief as described below.

87.     Medtronic's Sprint Fidelis leads constitute a product dangerous for its reasonably intended use due to defective design, manufacture, assembly and marketing. Medtronic is therefore liable to Plaintiff and Class members to pay the costs of a court-supervised medical monitoring program to detect fractured or malfunctioning leads before they cause further injury and damage in an amount according to proof.

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Warranty)

88.     Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporates the allegations contained in the foregoing paragraphs.

89.     Medtronic impliedly warranted that its Sprint Fidelis leads, which Medtronic designed, manufactured, assembled, promoted and sold to Plaintiff and Class members, were merchantable and fit and safe for ordinary use. Medtronic further impliedly warranted that its Sprint Fidelis leads were fit for the particular purpose of providing prophylactic treatment of patients with a variety of medical issues, including prior myocardial infarction and a limited ejection fraction, spontaneous and/or inducible life-threatening ventricular arrhythmias and a high risk for developing such arrhythmias.

90.     Medtronic further impliedly warranted that its Sprint Fidelis leads were based on "proven" lead technology and that the Sprint Fidelis leads were easier to implant than others.

741778.1

- 19 -

CLASS ACTION & INDIVIDUAL CLAIMS
AND JURY DEMAND

91.    Medtronic's Sprint Fidelis leads were defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected Plaintiff and Class members to the threat of severe and permanent injuries and death. Therefore, Medtronic breached the implied warranties of merchantability and fitness for a particular purpose when its leads were sold to Plaintiff and Class members, in that the leads are defective and have fractured and will, more likely than not, fail to function as represented and intended.

92.    As a direct and proximate result of Medtronic's breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff and Class members have sustained and will continue to sustain severe emotional distress, the need for and expense of ongoing medical monitoring, economic losses and consequential damages, and are therefore entitled to compensatory damages and equitable relief according to proof.

### THIRD CLAIM FOR RELIEF
#### (Negligence)

93.    Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporates the allegations contained in the foregoing paragraphs.

94.    Medtronic had a duty to Plaintiff and Class members to provide a safe product in design and manufacture, to notify the FDA of design flaws, and to warn the FDA and Class members of the defective nature of the Sprint Fidelis leads. Medtronic breached its duty of reasonable care to Plaintiff and Class members by incorporating a defect into the design of the Sprint Fidelis leads, thereby exposing Plaintiff and Class members to severe physical injury or death, and causing severe emotional distress, economic injury and the need for and expense of ongoing medical monitoring, as well as other injury.

95.    Medtronic breached its duty of reasonable care to Plaintiff and Class members by manufacturing and assembling the Sprint Fidelis leads in such a manner that they were prone to fracture, to fail to operate and to malfunction, thereby exposing Plaintiff and Class members to life-threatening physical trauma.

1    96.    Medtronic breached its duty of reasonable care to Plaintiff and Class

2  members by failing to notify the FDA, physicians, the Plaintiff and the Class members at the

3  earliest possible date of known design defects in the leads.

4    97.    Medtronic breached its duty of reasonable care to Plaintiff and Class

5  members by failing to exercise due care under the circumstances.

6    98.    As a direct and proximate result of Medtronic's negligent breach of its duty

7  of care owed to Mr. Hunter and the Class members, Mr. Hunter and the Class members are

8  currently exposed to a defective product which threatens them with severe physical injury and

9  death.

10    99.    Plaintiff and the Class members have a serious and reasonable fear, which

11  stems from knowledge corroborated by reliable medical and/or scientific opinion, that they more

12  likely than not will suffer severe physical injury or death in the future as the result of the

13  implantation of the defective Sprint Fidelis leads.

14    100.    As a direct and proximate result of the carelessness and negligence of

15  Medtronic as set forth in the preceding paragraphs, Plaintiff and Class members have sustained

16  and will continue to sustain severe emotional distress, the need for and expense of ongoing

17  medical monitoring, economic losses and other damages, and are entitled to compensatory

18  damages and equitable and declaratory relief according to proof. Medtronic's egregious

19  misconduct alleged above also warrants the imposition of punitive damages against Medtronic.

20    **FOURTH CLAIM FOR RELIEF**
       **(Negligent Infliction of Emotional Distress)**

21

22    101.    Plaintiff, on behalf of himself and all others similarly situated, re-alleges

23  and incorporates the allegations contained in the foregoing paragraphs.

24    102.    Medtronic carelessly and negligently manufactured, marketed and sold

25  defective Sprint Fidelis leads to Plaintiff and Class members, carelessly and negligently

26  concealed these defects from Plaintiff and Class members, and carelessly and negligently

27  misrepresented the quality, safety and usefulness of the leads.

28

741778.1                                    - 21 -                    CLASS ACTION & INDIVIDUAL CLAIMS
                                                                         AND JURY DEMAND

1           103.    Medtronic had a duty to Plaintiff and Class members to provide a safe

2 product in design and manufacture, to notify the FDA of design flaws, and to warn the FDA and

3 Class members of the defective nature of the Sprint Fidelis leads. Medtronic breached its duty of

4 reasonable care to Plaintiff and Class members by incorporating a defect into the design of the

5 Sprint Fidelis leads, thereby causing Plaintiff's and Class members' injuries.

6           104.    Medtronic breached its duty of reasonable care to Plaintiff and Class

7 members by manufacturing and assembling the Sprint Fidelis leads in such a manner that they

8 were prone to fracture and fail to operate and malfunction and expose Plaintiff and Class

9 members to life-threatening physical trauma.

10          105.    Medtronic breached its duty of reasonable care to Plaintiff and Class

11 members by failing to notify the FDA, physicians, the Plaintiff and the Class members at the

12 earliest possible date of known design defects in the leads.

13          106.    Medtronic breached its duty of reasonable care to Plaintiff and Class

14 members by failing to exercise due care under the circumstances.

15          107.    As a direct and proximate result of Medtronic's negligent breach of its duty

16 of care owed to Mr. Hunter and the Class members, Mr. Hunter and the Class members are

17 currently exposed to a defective product which threatens them with severe physical injury and

18 death.

19          108.    Plaintiff and the Class members have a serious and reasonable fear, which

20 stems from knowledge, corroborated by reliable medical and/or scientific opinion, that they more

21 likely than not will suffer severe physical injury or death in the future as the result of the

22 implantation of the defective Sprint Fidelis leads.

23          109.    Plaintiff and Class members were directly involved in and directly

24 impacted by Medtronic's carelessness and negligence, in that Plaintiff and Class members have

25 sustained and will continue to sustain severe emotional distress, economic losses, the need for and

26 expense of ongoing medical monitoring and other damages as a direct result of the decision to

27 purchase, use and have implanted in their bodies a defective and dangerous product

28 manufactured, sold and distributed by Medtronic.

110.    Medtronic's misconduct as alleged above has caused Plaintiff and Class members to suffer severe emotional trauma and long continued emotional disturbance. Plaintiff and Class members are therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

### FIFTH CLAIM FOR RELIEF
### (Breach of Express Warranties)

111.    Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporates the allegations contained in the foregoing paragraphs.

112.    Defendants expressly warranted to Plaintiff by and through Defendants and/or their authorized agents or sales representatives, in publications, the internet, and other communications intended for medical patients, and the general public, that the defective leads were safe, effective, fit and proper for their intended use.

113.    In allowing the implantation of the defective leads, Plaintiff relied on the skill, judgment, representations, and express warranties of Defendants. These warranties and representations were false in that the defective leads were not safe and were unfit for the uses for which they were intended.

114.    Through its sale of the defective leads, Defendants are merchants pursuant to Section 2-314 of the Uniform Commercial Code.

115.    Any disclaimers of express warranties are ineffectual as they were not provided to Plaintiff or the Class members or otherwise made known totem. In addition, any such disclaimers are unconscionable.

116.    As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and the Class members have sustained economic losses, the need for and expense of ongoing medical monitoring and other damages for which he is entitled to compensatory damages in an amount to be proven at trial. Any disclaimer of consequential damages is invalid as the limited remedy provided fails in its essential purpose to redress the harm and damages to Plaintiff and the Class members in that it, in effect, provides no remedy at all for the defect necessary to be redressed. In addition, any such disclaimer of consequential

1   damages in unconscionable. Defendants are liable to Plaintiff and the Class members jointly and

2   severally for all declaratory, equitable and injunctive relief, including the costs of a court-

3   supervised medical monitoring program, and for all damages to which Plaintiff is entitled by law.

4   **FIFTH CLAIM FOR RELIEF**
    **(Violation of Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, _et seq._)**

5

6       117.    Plaintiff, on behalf of himself and all others similarly situated, realleges

7   and incorporates the allegations contained in the foregoing paragraphs

8       118.    The UCL prohibits acts of "unfair competition," including any "unlawful,

9   unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading

10  advertising" as that term is used in Business and Professions Code § 17500.

11      119.    In violating the California Business and Professions Code §§ 17200, _et_

12  _seq._, as set forth above as the Fifth Cause of Action and incorporated herein, Medtronic engaged

13  in unlawful business practices in violation of the UCL.

14      120.    Medtronic engaged in unfair business practices in violation of the UCL.

15  The benefits of its practice of selling defective Spirit Fidelis leads that are inherently dangerous

16  and unreasonably prone to malfunction are outweighed by the resulting harm and danger to

17  Plaintiff, the Class, and the public.

18      121.    Medtronic engaged in fraudulent business acts or practices in that it

19  actively concealed  material information about the safety of the defective Spirit Fidelis leads and

20  it engaged in marketing which was likely to deceive the Plaintiff, the Class, physicians and the

21  public.

22      122.    Medtronic engaged in unfair competition or unlawful, unfair or fraudulent

23  business practices in violation of the UCL when it represented, through its marketing, warranties

24  and other express representations that the defective Spirit Fidelis leads were safe and free from

25  defects.

26      123.    As a proximate result of its unlawful, unfair or fraudulent practices,

27  Medtronic has been unjustly enriched and should be required to make restitution and/or

28  disgorgement of profits unjustly earned to the Plaintiff and the Class pursuant to Sections 17203

741778.1                                    - 24 -                    CLASS ACTION & INDIVIDUAL CLAIMS
                                                                              AND JURY DEMAND

1    and 17204 of the UCL and/or provide other appropriate equitable relief, including a court-

2    supervised medical monitoring program.

3                              **SIXTH CLAIM FOR RELIEF**
                          **(Declaratory Relief and Medical Monitoring)**
4

5              124.    Plaintiff, on behalf of himself and all others similarly situated, re-alleges

6    the allegations contained in the foregoing paragraphs.

7              125.    Plaintiff and Class members have no adequate remedy at law and damages

8    cannot adequately compensate Plaintiff and Class members for the injuries suffered and

9    threatened, rendering declaratory, injunctive, and other equitable relief appropriate.

10             126.    Through the unlawful conduct set forth in the preceding paragraphs,

11   Plaintiff and thousands of Class members have been implanted with a device which tends to

12   fracture, and otherwise malfunction. These defects have potentially fatal consequences for many

13   patients who rely upon the presence of the leads connected to the ICDs to regulate their cardiac

14   rhythms. These defects place Plaintiff and Class members at significant, increased risk of injury

15   and death, as a direct result of their implantation with said leads, through Defendants' fault.

16   These risks are unique to the Class, and detectable and correctable through ongoing medical

17   monitoring.

18             127.    There are medical risks to Plaintiff and Class members associated with

19   having the defective Sprint Fidelis leads explanted, as they have been implanted directly onto the

20   heart wall. Explanation procedures expose Plaintiff and Class members to significant risks

21   attendant to surgery, not least of which are potentially life-threatening infections and other harm.

22             128.    At the same time, Plaintiff and Class members, along with their physicians,

23   must weigh these risks against the possibility that Medtronic's Sprint Fidelis leads will fail or

24   have failed to function as designed, represented and intended, resulting in an increased risk of

25   heart damage, failure and/or death.

26             129.    Accordingly, Plaintiff, on behalf of himself and all others similarly

27   situated, requests the following classwide equitable relief:

28

741778.1                              - 25 -              CLASS ACTION & INDIVIDUAL CLAIMS
                                                                AND JURY DEMAND

1              (a)      That Medtronic be ordered to notify all potential Class members of the

2                     defective nature of the Sprint Fidelis leads;

3              (b)      That Medtronic be ordered to create a treatment fund, under the continuing

4                     jurisdiction and supervision of this Court, to monitor the health of Plaintiff

5                     and Class members, and to pay or reimburse Plaintiff and Class members

6                     for all evaluative, monitoring, diagnostic, preventative, and corrective

7                     medical, surgical, and incidental expenses caused by Medtronic's

8                     wrongdoing; and

9              (c)      Declaratory judgment that Medtronic is liable to Plaintiff and all Class

10                   members for all evaluative, monitoring, diagnostic, preventative, and

11                   corrective medical, surgical, and incidental expenses, costs and losses

12                   caused by Medtronic's wrongdoing.

13                                    **PRAYER FOR RELIEF**

14        WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated,

15 prays for judgment against Medtronic as follows:

16            1.      For an Order certifying the Class and any appropriate subclasses thereof

17 under the appropriate provisions of Federal Rule of Civil Procedure 23, and appointing Plaintiff

18 and his counsel to represent the Class;

19            2.      For the equitable relief requested;

20            3.      For compensatory damages according to proof;

21            4.      For punitive or exemplary damages against Medtronic, consistent with the

22 degree of Medtronic's reprehensibility and the resulting harm or potential harm to Plaintiff and

23 the Class, and in an amount sufficient to punish Medtronic and deter others from similar

24 wrongdoing;

25            5.      For all applicable statutory damages under the consumer protection

26 legislation of the State of California;

27

28

741778.1                               - 26 -           CLASS ACTION & INDIVIDUAL CLAIMS
                                                                       AND JURY DEMAND

1          6.     For declaratory judgment that Medtronic is liable to Plaintiff and Class

2    members for all evaluative, monitoring, diagnostic, preventative, and corrective medical, surgical,

3    and incidental expenses, costs and losses caused by Medtronic's wrongdoing;

4          7.     For notice to be disseminated to all Class members who have been

5    implanted with Sprint Fidelis leads;

6          8.     For a restitution and disgorgement of profits;

7          9.     For an award of attorneys' fees and costs;

8          10.    For prejudgment interest and the costs of suit; and

9          11.    For such other and further relief as this Court may deem just and proper.

10    **JURY DEMAND**

11          Plaintiff Rashid Hunter, on behalf of himself and all other California state

12    residents and citizens similarly situated, hereby demands a trial by jury in this case as to such

13    issues so triable.

14    Dated:  December 26, 2007                   LIEFF, CABRASER, HEIMANN &

15                                             BERNSTEIN, LLP

16                                        By:_____

17                                             Elizabeth J. Cabraser

18                                          Elizabeth J. Cabraser

19                                          ecabraser@lchb.com

20                                          275 Battery Street, 30th Floor

                                      San Francisco, CA  94111-3339

21                                          Telephone: (415) 956-1000

                                      Facsimile: (415) 956-1008

22

23

24

25

26

27

28

Wendy Fleishman
wfleishman@lchb.com
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Elizabeth A. Alexander
ealexander@lchb.com
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
150 Fourth Ave., N., Suite 1650
Nashville, TN 37219
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

*Attorneys for Individual and Representative
Plaintiff*

741778.1

CLASS ACTION & INDIVIDUAL CLAIMS
AND JURY DEMAND